IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| TANYA MCNEAL, | ) | CASE NO. 1:11CV526 |
| | ) | |
| Petitioner, | ) | JUDGE CARR |
| | ) | |
| v. | ) | MAGISTRATE JUDGE VECCHIARELLI |
| | ) | |
| STATE OF OHIO, Warden, | ) | |
| Ohio Reformatory for Women, | ) | |
| | **)** | **REPORT AND RECOMMENDATION** |
| Respondent. | ) | |

This matter is before the magistrate judge pursuant to Local Rule 72.2(b)(2). Before the court is the petition of Tanya McNeal ("McNeal") for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 on March 15, 2011. McNeal is in the custody of the Ohio Department of Rehabilitation and Correction pursuant to journal entry of sentence in the case of *State of Ohio vs. McNeal*, Case No. CR-07-500391-C (Cuyahoga County 2008). Also before the court is the motion of McNeal to hold the case in abeyance while she exhausts her state claims. Doc. No. 12. For the reasons set forth below, McNeal's motion should be DENIED and her petition DISMISSED.

I.

The state appellate court reviewing McNeal's conviction during her direct appeal found the following facts to be relevant to her case:

{¶ 2} In September 2007, McNeal and codefendants, Daniel Verhun ("Verhun") and

Keith Hilliard ("Hilliard"), were charged in an eight-count indictment.FN1  McNeal was charged with two counts of drug possession and two counts of drug trafficking. The matter proceeded to a jury trial, at which the following evidence was adduced.

FN1. Both Verhun and Hilliard pled guilty to an amended charge of drug possession.

{¶ 3} In January 2007, Cleveland police searched Hilliard's home pursuant to a search warrant.  While at Hilliard's home, the police learned that Hilliard planned on ordering a shipment of cocaine from Verhun later that day.  Hilliard called Verhun and ordered the drugs in the presence of police.  Verhun testified that he then called one of his suppliers, Marlon Bennett ("Bennett"), who advised him to contact McNeal and arrange a meeting to pick up the drugs.FN2  Verhun then contacted McNeal, who suggested that they meet at the local Blockbuster Video ("Blockbuster") store. Verhun testified that he has known McNeal for approximately ten years and that she works as a beautician, but also is a drug runner.

FN2. Bennett is Verhun's nephew by marriage.

{¶ 4} Based on Hilliard's information, Cleveland police set up surveillance at Verhun's home and followed him to Blockbuster.  Verhun arrived at Blockbuster before McNeal, so he went inside the store.  When he came out of the store, he observed McNeal parked next to his vehicle.  He walked over to her vehicle and reached into the front passenger window. She handed him a plastic bag that felt heavy to Verhun, so he looked inside and noticed a scale.  He did not want the scale, so he took the drugs out of the plastic bag, put them in his vehicle, wrapped the scale in the bag, and returned it to McNeal.  Verhun then told her that he would call her later to pay her for the drugs.  He intended to sell the drugs to Hilliard for $7,000.

{¶5} The police then followed Verhun to Hilliard's house, where he was arrested. When they approached his vehicle, they observed cocaine in the front seat.  Verhun told the police that McNeal delivered the drugs to him and that he was going to meet her again to pay her $6,000 for the drugs.  After Verhun's arrest, the police had Verhun call McNeal and they arranged to meet at a Drug Mart.  When McNeal arrived, Verhun identified her to the police and she was arrested.

{¶ 6} After her arrest, McNeal gave the police consent to search her apartment in Lakewood and her apartment in Cleveland.  They found two bags with cocaine residue in a garbage can in the Lakewood apartment.

{¶ 7} McNeal testified in her own defense.  She admitted meeting Verhun at Blockbuster, but claimed that she met him there to give him Bennett's belongings, not to give him drugs.FN3  She testified that Verhun was supposed to give her the $800 that Verhun's wife owed Bennett. She stated that Bennett was loaning her the money so she could buy some baby items for her pregnant daughter.  She testified

that she gave Verhun a plastic bag that contained the scale and another bag, which contained clothing. Verhun returned the scale to her, but did not give her the $800 she was expecting. She stated that she met Verhun at Drug Mart in order to get the $800 from him, but was stopped by the police. She testified that she did not know that there were drugs in the bag and at her home. She also denied knowing that she was to receive proceeds from Verhun's drug transaction.

FN3. McNeal and Bennett were romantically involved, and she had recently ended the relationship.

{¶ 8} The jury found McNeal guilty of two counts of drug possession and two counts of drug trafficking. The trial court sentenced her to six years in prison on each drug trafficking charge and one of the drug possession charges. She was sentenced to one year in prison on the remaining drug possession charge, with the four counts to be served concurrent to each other, for an aggregate of six years in prison.

*State v. McNeal*, 2009 WL 2400869, at *1-*2 (Ohio App. Aug. 6, 2009). The court entered judgment against McNeal on May 2, 2008. On June 24, 2008, McNeal filed in the trial court a Motion for Discovery Packet and Related Information and a Motion for Court Records without Cost. There is no indication in the record that the court ruled on these motions.

On May 28, 2008, McNeal timely appealed her conviction and sentence. McNeal raised three assignments of error in her direct appeal:

FIRST ASSIGNMENT OF ERROR:

Appellant's due process right to a fair trial was violated by the introduction of unfairly prejudicial "other acts" evidence in violation of Evid.R. 404(B) and R.C. 2945.59.

SECOND ASSIGNMENT OF ERROR:

The trial court denied appellant's due process right to a fair trial by issuing an incomplete and incorrect "deliberate ignorance" jury instruction, over appllant's objection.

THIRD ASSIGNMENT OF ERROR:

The appellant's convictions are against the manifest weight of the evidence.

On August 17, 2009, the state appellate court overruled her assignments of error and

3

affirmed the trial court's judgment.

McNeal filed in the Ohio Supreme Court a timely notice of appeal of the state appellate court's decision. In her memorandum in support of jurisdiction, McNeal asserted two propositions of law:

> Proposition of Law I: A jury instruction permitting the jury to convict the accused of possession or conveyance of drugs if the accused acted with "deliberate ignorance" fails to ensure that the jury found the requisite "knowing" mental state beyond a reasonable doubt.
>
> Proposition of Law II: If a trial court issues a "deliberate ignorance" jury instruction regarding possession or conveyance of drugs, the court must instruct the jurors that the accused's mere carelessness, or actual belief that the object possessed is lawful, precludes a determination that the accused possessed the required "knowing" mental state.

On December 30, 2006, the Ohio Supreme Court denied leave to appeal and dismissed the appeal as not involving any substantial constitutional question. On January 11, 2010, McNeal filed in the Ohio Supreme Court two motions to reconsider, one *pro se* and one with the assistance of counsel. On March 3, 2010, the Ohio Supreme Court denied both motions.

On November 18, 2009, McNeal filed in the state appellate court an untimely application to reopen her direct appeal pursuant to Ohio App. R. 26(B) ("R. 26(B)"). McNeal alleged that appellate counsel had been ineffective for failing to raise on appeal repeated instances of ineffective assistance of trial counsel. The state appellate court denied the application as untimely and found that McNeal had not demonstrated good cause for the untimeliness. McNeal moved *pro se* for leave to file a motion to reconsider the denial of her application, and the appellate court denied leave to file. McNeal did not appeal this decision to the Ohio Supreme Court.

4

On March 23, 2011, McNeal filed in the trial court a motion for modification of sentence. The trial court denied this motion on March 30, 2011.

On March 15, 2011, McNeal filed in this court a petition for a federal writ of habeas corpus. McNeal asserts four grounds for relief in her petition:

> GROUND ONE: Misconduct by prosecutor--violation of 4th Amendment, chain of custody, avoiding presumption clause of innocence.
>
> GROUND TWO: Violation of 6th Amendment right--right to confront all witness[es] against him or her.
>
> GROUND THREE: Ineffective assistance of counsel. 6th Amendment.
>
> GROUND FOUR: 5th & 14th Amendment right to due process.

(Capitalization altered from the original.) Respondent filed an Answer/Return of Writ on March 25, 2011. Doc. No. 11. McNeal filed a Traverse on July 25, 2011. Doc. No. 21. Thus, the petition is ready for decision.

II

*A. Jurisdiction*

The Court of Common Pleas of Cuyahoga County, Ohio sentenced McNeal. McNeal filed her writ of habeas corpus in the Northern District of Ohio and raises claims regarding the constitutionality of her incarceration under 28 U.S.C. § 2254.

> Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions. . . . Where an application for a writ of habeas corpus is made by a person in custody under the judgment and sentence of a State court of a State which contains two or more Federal judicial districts, the application may be filed in the district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him and each of such district courts shall have concurrent jurisdiction to entertain the application.

28 U.S.C. § 2241(a ) & (d). Cuyahoga County is within this court's geographic jurisdiction.

5

This court has jurisdiction over McNeal' petition.

*B.    Evidentiary hearing*

The habeas corpus statute authorizes an evidentiary hearing in limited circumstances when the factual basis of a claim has not been adequately developed in state court proceedings. 28 U.S.C. § 2254(e)(2). There is no need for an evidentiary hearing in the instant case. All of McNeal's claims involve legal issues that can be independently resolved without additional factual inquiry.

*C.    Exhaustion of state remedies*

A state prisoner must exhaust all available state remedies or have no remaining state remedies available prior to seeking review of a conviction via federal habeas corpus. 28 U.S.C. § 2254(b) and (c); *Castillo v. Peoples*, 489 U.S. 346, 349 (1989); *Riggins v. Macklin*, 936 F.2d 790, 793 (6th Cir. 1991). If any state procedures for relief remain available, the petitioner has not exhausted state remedies. *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).

A petitioner must fairly present any claims to the state courts in a constitutional context properly to exhaust state remedies. *Anderson v. Harless*, 489 U.S. 4 (1982); *Picard v. Connor*, 404 U.S. 270 (1971); *Shoultes v. Laidlaw*, 886 F.2d 114, 117 (6th Cir. 1989). "[O]nce the federal claim has been fairly presented to the state courts, the exhaustion requirement is satisfied." *Picard*, 404 U.S. at 275; *see also Harris v. Reeves*, 794 F.2d 1168. 1174 (6th Cir. 1986). The exhaustion requirement is properly satisfied when the highest court in the state in which petitioner was convicted has been given a full and fair opportunity to rule on all the petitioner's claims. *Manning v. Alexander*, 912 F.2d 878, 881-83 (6th Cir. 1990).

6

The requirement that petitioners exhaust state remedies is a matter of comity between the federal government and the states:

> The exhaustion doctrine is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings. . . . Because "it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation," federal courts apply the doctrine of comity, which "teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter."

*Rose v. Lundy*, 455 U.S. 509, 518 (1982) (quoting *Darr v. Burford*, 339 U.S. 200, 204 (1950)) (other citations omitted). Because exhaustion is a matter of comity, a petition containing unexhausted claims may be denied on the merits. 28 U.S.C. § 2254(b)(2).

McNeal has no state remedies available for her claims. The date of entry of judgment against her was May 2, 2008. Thus, the latest date on which she could have filed a timely petition for post-conviction relief pursuant to Ohio Rev. Code § 2953.21 was October 29, 2008. *See* Ohio Rev. Code § 2953.21(A)(2) (requiring petitioners to file a petition for post-conviction relief no later than 180 days after entry of judgment against them). Moreover, all of McNeal's grounds for relief are claims which could have been raised on direct appeal and were not. In Ohio, a claim which could have been raised on direct appeal but was not raised at that time are barred from being raised later by *res judicata*. *State v. Dehler*, 73 Ohio St. 3d 307, 307, 652 N.E.2d 987, 987 (1995) ("*[R]es judicata* bars the further litigation of issues that were raised or could have been raised on direct appeal."). McNeal is barred, therefore, from raising those claims in any state court. Because no state remedies remain available to her, McNeal has exhausted state remedies.

As McNeal has exhausted state remedies, it would be pointless to hold this case in

7

abeyance to allow her to return to state court. In addition, holding a case in abeyance while a petitioner returns to state court to exhaust state remedies is only appropriate when the petition is a "mixed" petition, consisting of some claims which have been exhausted and some which have not. *See Rhines v. Weber*, 544 U.S. 269 (2005). McNeal's petition is not a mixed petition.

As McNeal has already exhausted state remedies and as her petition is not a mixed petition, her motion to hold the case in abeyance while she returns to state court to exhaust her claims should be denied.

*D.     Procedural default*

Reasons of federalism and comity generally bar federal habeas corpus review of "contentions of federal law . . . not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure." *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). When a petitioner

> has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Procedural default occurs when a petitioner fails to present fairly to the highest state court her claims in a federal constitutional context. *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999); *Anderson v. Harless*, 459 U.S. 4 (1982). Moreover, a failure to present a claim to the highest court in the state deprives a federal court hearing a habeas petition of jurisdiction on that issue. *See McKeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).

Respondent contends that McNeal has defaulted all her claims. McNeal has not

8

raised any of her grounds for relief in the Ohio Supreme Court.  The failure to raise her claims in the highest court of the state deprives this court of jurisdiction over her grounds for relief unless McNeal can demonstrate cause and prejudice for her default or demonstrate that enforcing the default would result in a fundamental miscarriage of justice.

McNeal asserts as cause for her default ineffective assistance of appellate counsel.  Ineffective assistance of counsel may serve as cause for a procedural fault.  *Rust v. Zent,* 17 F.3d 155, 161 (6th Cir. 1994).  However, for ineffective assistance of counsel to serve as cause to excuse a procedural default, the petitioner must present the claim of ineffective assistance to the state courts as an independent claim.  *Murray v. Carrier,* 477 U.S. 478, 488-89 (1986).  Otherwise, an ineffective assistance of counsel claim can itself be procedurally defaulted. *Edwards v. Carpenter,* 529 U.S. 446, 453 (2000); *see also Richey v. Mitchell,* 395 F.3d 660, 679 (6th Cir. 2005).

McNeal failed to raise her claim of ineffective assistance of appellate counsel in the Ohio Supreme Court after the state appellate court denied her application to reopen her direct appeal as untimely.  McNeal does not give cause for this failure to raise her claim in the Ohio Supreme Court.  Consequently, McNeal's claim of ineffective assistance of appellate counsel is itself procedurally defaulted and may not serve as cause to excuse other procedural defaults.

McNeal also contends that enforcing the default would result in a fundamental miscarriage of justice because she is actually innocent.  Innocence, by itself, is not a ground for habeas relief, although a claim of innocence allows a federal court to review the merits of an otherwise procedurally-defaulted claim.  *See Herrera v. Collins*, 506 U.S. 390 (1993) (holding that a claim of actual innocence based on newly discovered evidence is not

9

ground for federal habeas relief); *Murray v. Carrier*, 477 U.S. 478 (1986) (holding that in an extraordinary case, where constitutional violation has probably resulted in conviction of one who is actually innocent, federal habeas court may grant writ even in absence of showing of cause for procedural default).

While a federal habeas court may excuse a procedural default upon a showing of actual innocence, the standard for demonstrating actual innocence, as described in *Schlup v. Delo*, 513 U.S. 298 (1995), is a rigorous one: A petitioner must establish that, in light of new evidence, "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id.* at 327. A court faced with a claim of actual innocence must keep three things in mind. First, for a claim of innocence to be credible, there must be "new reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence--that was not presented at trial." *Id.* at 324. In examining this new evidence and other evidence of record, the court's function is not to make an independent factual determination about what likely occurred, but rather to assess the likely impact of the totality of the evidence on reasonable jurors. *Id.* at 329. Second, the court must be aware that the *Schlup* standard permits review only in the "extraordinary" case. *Id.* at 327. "[I]n the vast majority of cases, claims of actual innocence are rarely successful." *Id.* at 324. Third, because a *Schlup* claim involves new evidence, the federal court must assess how reasonable jurors would react to the totality of the newly-supplemented record. This may include, if necessary, making credibility assessments of witnesses presented at trial in light of new evidence. *Id.* at 330-32; *see also House v. Bell*, 547 U.S. 518, 538-39 (2006).

In the present case, McNeal has submitted as evidence a page from an

Offense/Incident Report from the Cleveland Police Department and two Forensic Laboratory Reports. These were attached to her petition.[1] Notations on these exhibits indicate that McNeal has questions regarding the dates, times, and redactions in these exhibits. McNeal fails to explain, however, in her petition or her traverse, how these exhibits would likely cause a reasonable juror to find her not guilty.[2] Instead, McNeal backs her contention that she is innocent with a series of unsupported, conclusory allegations about the credibility of the witnesses against her, suppression of evidence, failure to investigate, prosecutorial misconduct, and ineffectiveness of trial counsel. Unsupported allegations are not evidence, and they are far from meeting the rigorous standard described by *Schlup* for supporting a claim of actual innocence.

McNeal fails to demonstrate that in light of new evidence no reasonable jury would have found her guilty. This is not, therefore, the "extraordinary" case which requires the court to overlook a petitioner's procedural default and consider the merits of her defaulted claims to avoid a miscarriage of justice.

McNeal has defaulted all her claims for relief. She does not establish cause and prejudice for her default, nor does she demonstrate that enforcing the procedural default would result in a miscarriage of justice. For these reasons, the court should dismiss McNeal's claims as procedurally defaulted.

---

[1] Other exhibits were also attached to McNeal's petition, but the other exhibits did not potentially bear on her guilt or innocence.

[2] She also does not explain whether this is new evidence or evidence presented at trial.

11

IV.

For the reasons given above, (1) McNeal's motion to hold the case in abeyance while she exhausts state remedies should be DENIED, and (2) all of McNeal's grounds for relief should be dismissed as procedurally defaulted and her petition dismissed.

Date:  November 9, 2011                    /s/ Nancy A. Vecchiarelli
                                           United States Magistrate Judge

**OBJECTIONS**

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111.**